## PARKER, BEALE *et al.* vs. A. F. DONNALLY *et al.*

### January Term, 1871.

1. The personal representatives of a deceased debtor are not, as such, the debtors of the creditors of their testator or intestate, within the sense of the statute. They are not liable in the *debit*, but in the *detinet* only. The personal estate is in their hands to be administered according to law, and is not, therefore, the subject of garnishment by the creditors of the estate of the decedent. But—

> *Quære:* Whether in a suit and attachment against the creditors of such decedent debtor, an equitable lien on the debt against the estate of the latter, in favor of the former, might be created by the service of an attachment on the personal representatives of such decedent, carrying with it all the rights, liens and sureties of such debtor?

2. The Bank of Virginia, located at Richmond, has an office of discount and deposit at Charleston. The management and control of the latter is under a board of directors appointed by the former. No directors are appointed by the former for the Charleston branch, after the war commenced in 1861, and the board, whose term of office expired in that year, refused to act in that capacity. The cashier and other officers also dissevered their connection with the branch, and the assets and affairs thereof passed into the control of the president thereof, who was recognized by the officers of the parent bank, and was authorized to pay depositors and receive payment of debts at that time. Richmond was within the confederate military lines until 1865, and Charleston was within the federal lines. In 1863, the president receives payment from S. of a debt due the branch at Charleston, from the estate of D., with the consent of the administrator of D., and the president assigns the debt, which is secured by a trust deed, to S. A bill is filed by a creditor of the bank, in 1867, to set aside the assignment to S., upon the ground of its being void for the

---

* He had been engaged as counsel in the cause below.

reason that there was no authority in the president to make it, and claiming the benefit of the lien of the bank on Donnally's estate, secured by the trust deed, by virtue of an attachment. HELD:

I. That under the special circumstances the payment made by S. ought to be sustained, and that the authority of the president to make the assignment was adequate.

II. That inasmuch as it was not alleged in the bill, nor does it appear in the record, that the bank or its creditors were injured by the payment; nor that the funds were misapplied or wasted by the president, or that any loss was sustained by the bank or the creditors in consequence of the receipt of such payment; nor that the funds received were under par at the time, or that they did not in fact enure to the benefit of the general creditors of the bank, it would be severe and rigorous doctrine for a court of equity to hold that payments thus made to the president, with the continuous acquiesence of the bank for many years should, at the instance of creditors, be set aside, and the debtors compelled to pay their debts again, in the absence of any allegations in the bill, or anything that appears elsewhere in the record, that the bank or the creditors were in fact injured by such payment.

III. That as it was competent for the representatives of D. to pay the debt, there could be no ground of complaint on the part of the creditors at large of the bank, who are not shown to be injured thereby, that S. should have paid the debt for them, and with their consent, as well as the assent of the bank, and taken a transfer of the debt, together with the trust or lien by which it was secured.

A chancery suit was pending in the circuit court of Kanawah county, of *Parker, Beale et al.* v. *A. F. Donnally et al.*, to enforce liens against the defendants, in October, 1867, when Charles Hedrick, executor of Samuel J. Cabell, deceased, filed a petition in the nature of a cross-bill, alleging that the president, directors and company, of the bank of Virginia, were parties to the suit, and were creditors of the Donnallys, secured by a deed of trust; that their claim amouted to 15,000 dollars or more. That this claim had been reported in the cause, by a master, as the property of Isaac N. Smith, upon what purported to be a copy of an assignment by James C. McFarland, president of the office of the bank of Virginia, at Charleston. That Smith did

not appear to be a party to the suit, nor to be interested in it, except by virtue of the assignment. That the bank of Virginia was established at the city of Richmond, and had an office of discount and deposit at Charleston; that the management of the office of discount and deposit was committed to the directors, &c. That it had no right to exercise any functions of a bank, except for the purposes of discount and deposit, and was subject to the control and authority and management of the parent bank at Richmond.

That in the year 1862, the testator, Cabell, had a deposit at the office in Charleston, of upwards of 14,000 dollars, a large part of which had been there prior to the war; that shortly after the war the latter was within the Federal military lines, and the parent bank within the rebel lines, and so remained until the close of the war. That soon after the beginning of hostilities, the board of directors at Charleston ceased to exercise any control or management over the affairs of the office, and in a short time their terms of office expired by operation of law, and no other board was ever appointed. That McFarland never had any authority to transfer, assign or dispose of the debt due from Donnallys, nor any other of the assets of the bank of Virginia at its office in Charleston, either by virtue of his office as president, or by a vote of the board of directors of the parent bank, or of the Charleston office. That when it became known that McFarland was about to make the assignment, some members of the last board, whose office had expired, but who were still stockholders, protested against the assignment as illegal and unauthorized, and urged McFarland not to make it.

That testator, Cabell, had, in 1864, instituted a suit in chancery, and sued out an attachment against the bank of Virginia as a foreign corporation, to secure the amount of his deposit; after which time Cabell departed this life, and the petitioner, after being duly qualified, sued out, in August, 1867, an additional attachment, in which he attached the debt due from Donnallys to the bank.

The petitioner claimed that his attachment lien was the first and only lien against the debt due from Donnallys, and that the lien of the trust enured to his benefit. He prayed that the assignment from McFarland be set aside, and that the debt due from Donnallys be decreed to the payment of the debt due him, under his attachment. The attachment required it to be served on (among others) Andrew F. and William Donnally, and Andrew F. and Dryden Donnally, administrators of Andrew Donnally, deceased. A supplemental bill was filed at September rules, 1867, further charging that Andrew F. Donnally and William Donnally were indebted to the non-resident defendant, in the suit instituted by the testator, in 1864, on account of a debt due from Andrew Donnally, deceased, their father, which they assumed and undertook to pay for him, in consideration of certain valuable property, both real and personal, conveyed by him to them; the debt being that due the bank, and was secured to the bank by a trust deed on the same property, or on part of it conveyed by the deceased to his two sons. That Andrew F. Donnally and Dryden Donnally qualified as administrators with the will annexed, of their father, deceased. That the assignment of this debt by McFarland, was wholly without power or authority, and did not pass any right or property in the claim to Smith.

Smith answered the petition and cross-bill, admitting the assignment which took place on the 25th of July, 1863. He further averred that at the time thereof, the cashier and teller had dissevered their connection with the bank, and that the assets and business thereof was exclusively in the care and control of the president, McFarland, who had been president of the bank at Charleston since its formation in 1831, and who had the confidence of the officers of the parent bank. That the president, in default of a new election, held his office over, and continued to transact the business of the branch, which consisted principally in the collection of its debts and the payment of depositors, during almost the entire war. That his authority to manage, dispose of, and

control the assets, was recognized by the parent bank, from which he received instructions as often as the nature of the circumstances would permit; which instructions were delivered through the president and cashier of the parent bank, and prescribed a policy for the Charleston office. That under these circumstances the assignment of the 25th of July, 1863, was made, at the instance and with the full consent of Andrew F. Donnally, administrator of Andrew Donnally, deceased.

The assignment, a copy of which was filed with Smith's answer, was a formal instrument, and recited the transaction and deed of trust by which the lien was created, which deed of trust was dated in 1847. There appeared on the assignment an endorsement of Andrew F. Donnally, dated the day of the making of the assignment, stating that it was done at his instance and with his consent, signed as an individual and in his character as administrator.

Smith's answer was accompanied by an exhibit of a letter from the cashier of the parent bank, dated in October, 1862, to McFarland, saying, in effect, that he, McFarland, could only pay depositors in such funds as he received, and that he must not refuse confederate currency in payment of debts due the Charleston office; concluding as follows: "There was no election or appointment of directors for your office last January. It was thought best—pursue this course, as those then in office by law continued to be directors until their successors are appointed. We hope you will be with us, or have some one to represent you here next January." This appears, by the record, to be the only communication between the banks during the war.

There were only three depositions taken in the cause. W. E. G. Gillison deposed that he was a director and stockholder in the bank, in 1861; no directors were ever appointed after the war commenced. He had remonstrated with McFarland about transferring the claim against Donnallys. Smith had told witness that McFarland had promised to let him have the claim for Virginia money. McFarland, in 1863, had

always expressed himself as willing to receive debts due the bank in Virginia money, and many had availed themselves of the privilege.

The deposition of J. H. Goshorn, who was also a stockholder, proved that he had protested against the assignment. W. F. Goshorn, who was a director in 1861, also proved a protest against the assignment.

The court below dismissed the petition and cross-bill of the executor, at the December term, 1869. From which decree he appealed to this court, assigning error as follows:

"1st. If the branch at Charleston had been an independent corporation, moving on smoothly under the semi-somnolent vigilance of an acting board in time of peace, the president *ex officio* would have had no right to transfer or assign the assets of the bank to any one for any purpose. [See Angel and Ames on Corp., sec. 297-8-9]. *A fortiori,* the powers of the officers of the bank must be much more circumscribed when all its functions are destroyed or suspended by war. This view is enhanced when it is recollected that the branch at Charleston was not an independent corporation, but a mere agency or appendage of the bank of Virginia at Richmond.

"2d. By the operation of law resulting from the creation of the State of West Virginia, from the existence of the war, and from other circumstances shown in the record, the branch at Charleston, at the date of the assignment, had ceased to have a corporate existence, and the powers of McFarland as president (whatever they may have been) had terminated. Consequently his pretended assignment was a simple nullity.

"3d. Whether the branch at Charleston had ceased to have a corporate existence or not, it is insisted that McFarland's powers as an officer of the bank had ceased."

Hon. James W. Hoge, judge of the circuit court of Kanawha county, presided on the hearing of the cause.

*Fitzhugh* and *Hedrick* for the appellants.

*Ferguson* and *Quarrier* for the appellees.

BERKSHIRE, *President.*

The appellant founds his claim to the fund in controversy, upon an alleged lien created on it by virtue of an attachment sued out in August, 1867, in the suit previously instituted and then pending against the president and directors of the Farmers' Bank of Virginia (as a foreign corporation) and others, referred to in his petition or cross-bill filed in this cause.

The suit against the bank and others was for the purpose of enforcing the collection of a large debt due from it to the appellant's testator, as a depositor in said bank, and to settle up and close the business of the bank by collecting and distributing its assets amongst its creditors. And it is charged in the bill, among other things, as it is in the petition and cross-bill in this cause, that the alleged assignment by McFarland, as president of the bank, to I. N. Smith, of the debt due to it from the estate of Andrew Donnally, was illegal and void for want of authority in said McFarland to make it, and that it was made in opposition to the wishes of a portion of the stockholders in said bank, and against their protests. Among others named in the attachment as being debtors to, or having effects in their hands belonging to said bank, are Andrew F. and William Donnally, and Andrew F. and Dryden Donnelly, administrators of Andrew Donnally. It does not appear, however, to have been *served* on any of them but Andrew F. Donnally; but whether as an individual or as a representative of his deceased father, the original debtor to the bank, does not appear.

In the supplemental bill to the petition and cross-bill filed in this cause, it is alleged that Andrew F. and William Donnally were indebted to said bank on account of the debt due from their father, which they assumed to pay for him, in consideration of certain valuable real and personal property conveyed by him to them. But there is no proof

in the record to sustain this allegation. It is also averred that Andrew F. and Dryden Donnelly, qualified as administrators, with the will annexed, of their father, Andrew Donnally.

Andrew F. Donnally did not answer as garnishee or otherwise, and no proof was taken as to his alleged individual or joint indebtedness to the bank, nor does it appear that there was any personal assets of the estate of the intestate, then in the hands of the administrators, unadministered, upon which the attachment could operate, even if such assets could be attached in their hands.

It is clear, I think, that the personal representatives of a decedent debtor are not, as such, the *debtors* of the creditors of their testator or intestate, within the sense of the statute. They are not liable in the *debit*, but in the *detinet* only. The personal estate is in their hands to be administered according to law, and is not, therefore, the subject of garnishment by the creditors of the estate of the decedent. Drake on Attachments, secs. 98, 99. It may be, however, that in a suit and attachment against the *creditors* of such decedent debtor, an equitable lien on the debt against the estate of the latter, in favor of the former, might be created by the service of the attachment on the personal representative of such decedent, carrying with it all the rights, liens and sureties of such debtor. On this point, however, I express no definitive opinion, as the view I take of this cause renders it unnecessary to decide it.

The controversy here, in my judgment, must hinge mainly on the question, whether at the time of the payment by I. N. Smith of the debt due from the estate of Andrew Donnally to the bank, and the alleged assignment or transfer of the debt to him by McFarland, the latter had authority to receive payment of the debts due to the bank; or in other words, whether a payment to him in good faith by the representatives of Andrew Donnally or other debtors, of the debts due from them to the bank would, under the circumstances, have been a valid payment as between the parties?

For if it would, it is clear, I think, that a payment of the debt by Smith, with the assent and approbation of the administrators and the bank, would be equally valid and binding on the bank and its creditors; and consequently, there being no debt due from the estate of the debtor Andrew Donnally, when the attachment was issued and levied, it must of necessity fail.

Looking to the whole case, and the very special circumstances by which McFarland was surrounded at the time, and under which he acted in the premises, after careful and anxious consideration, I am brought to the conclusion that he had such authority, and that such payments ought to be sustained. It is not shown by the record that either the bank or its creditors were, in fact, *injured* by such payment. It is not so alleged either in the petition or cross-bill, or the supplemental bill to the same, and in my view they are each clearly defective in this respect. It does not appear, nor is it suggested on the record, that the funds received from Smith, in payment of the Donnally debt, or any other funds received by McFarland, were wasted or misapplied by him, or that any loss was sustained by the bank or the creditors in consequence of such receipts, or that the funds received were under par at the time, and therefore the question as to the amount received by McFarland does not arise. And for aught that appears, the funds received from Smith did in fact enure to the benefit of the general creditors of the bank. How this may be in point of fact, cannot be ascertained from this record, as only small fragmentary parts of the record of each of the cases referred to, are brought into it.

It appears to me, therefore, that under the peculiar circumstances of this case, it would be very severe and rigorous doctrine for a court of equity to hold that payments thus made to the president, with the continuous acquiescence of the bank, for many years, should, at the instance of its *creditors*, be set aside and the debtors compelled to pay their debts again; and that too, in the absence of any suggestion

that either the creditors or the bank were *in fact* injured by such payment!

From the foregoing view it follows that, as it was competent for the representatives of Andrew Donnally to pay the debt due from his estate, there could be no ground of complaint on the part of the creditors at large of the bank, who are not shown to be injured thereby, that Smith should have paid the debt for them, and with their consent, as well as the assent of the bank, taken a transfer of the debt, together with the trust or lien by which it was secured.

I am of opinion, therefore, to affirm the decree complained of, with costs and damages.

Maxwell, J., concurred.

DECREE AFFIRMED.