# Wheeling.

3 309
50 208

3 309
54 160

3 309
63 551

## THE BANK OF THE VALLEY vs. J. H. GETTINGER.

January Term, 1869.

1. The question of the jurisdiction of the circuit court can only be raised by plea in abatement. Code 1860, chap. 171, sec. 19.

2. A voluntary assignment, made in another State, of a debt due from a citizen and resident of this State, to a resident of such other State, passes the debt to the assignee at the time of the assignment so as to defeat a subsequent attaching creditor of the assignor in this State, whose attachment was issued and served on the debtor of the assignor after the assignment and before such debtor had notice of it. But otherwise as to involuntary or coercive assignments.

This case arose in Berkeley county. The summons was issued on the 30th of March, 1866. The questions which were determined by this court, and through which the judgment below was affirmed, were upon the pleadings and are stated in the opinion of the judge. The court, however, by consent and desire of the parties, considered the questions that would arise in the circuit court on the hearing of the petition of the assignee of the plaintiff in error, which renders necessary a further statement of the facts on one point involved, as to whether the assignment of the plaintiff in error was voluntary. That assignment was made in pursuance of an order of the board of directors of the Bank of the Valley, made on the 10th of March, 1866. The resolution of the board, which was passed unanimously, provided for the sale of the effects of the bank and collection of all sums due it, to be applied to the payment of debts, under certain restrictions and in a manner specified therein,

The deed of assignment was made on the same day of the passage of the order and made Henry M. Brent, the former cashier, the trustee.

*Charles J. Faulkner* for the plaintiff in error.

1. A corporate body as well as a private individual, when in failing circumstances, and unable to redeem its paper, may without any statute provision, and upon general principles of equity, assign its property to a trustee, in trust to collect its debts, and make distribution among its creditors. 3 Barb., chapter 119, 124, affirmed on appeal; 3 Comstock, 233; 6 Conn., 233; 3 Wendell, 13; 2 Kent's Com. 315.

2. In this case the assignment of the Bank of the Valley, although altogether voluntary, was under the authority of an act of the legislature of Virginia passed on the 12th of February, 1866, and in conformity to the provisions of that act.

3. This assignment to a trustee to collect the debts and to make distribution of its assets was executed on the 10th day of March, 1866, and promptly thereafter placed upon the registry of those counties in this State, in which the bank was, at the time, the owner of real estate.

4. The summons and attachment sued out by the appellee against the assets of the Valley Bank bears date the 30th of March, 1866, some *twenty days subsequent* to said assignment.

If this assignment was valid, and operated a transfer to the trustee for the purposes of the trust, of the assets of the bank within the limits of West Virginia, then there was no fund in this State subject to attachment, and the summons and attachment should be dismissed.

Much diversity of opinion has existed amongst jurists as to the effect of *compulsory assignments* beyond the limits of the territorial jurisdiction in which they are made. It has been argued that these compulsory conveyances—such as in cases of bankruptcy—being made *in invitum*—and deriving their authority from the force of a foreign statute, cannot operate upon any property except that which is within its

own territory. The English doctrine is well established and gives full effect to assignments by operation of law, even when brought in conflict with the rights of its own creditors, and Chancellor Kent, in a most luminous and learned opinion in the case of *Holmes* vs. *Remson,* 4 Johns. Chy. Rep., 460, has maintained the same doctrine as founded upon authority, justice and the comity of nations. But it is conceded that the weight of American authority is decidedly adverse to this view, and that an assignment abroad by act of law, has no legal operation *extra territorium* as against the claims of our own citizens.

But such is not the received doctrine as to voluntary assignments. The law says, Story (conflicts of law, sec. 411) makes a solid distinction between the voluntary conveyance of the owner and an involuntary legal conveyance by mere authority of the law. The former has no relation to place; the latter on the contrary has the strictest relation to place. It may, therefore, be considered settled, that a voluntary assignment by a party according to the law of his domicil, will pass his personal estate, whatever may be its locality, abroad as well as at home, p. 551. *Black* vs. *Zacharie & Co.*, 3 How., 514; *Speed* vs. *May*, 5 Harris, 91; *Law* vs. *Mills*, 6 Harris, 185; *Means* vs. *Hapgood*, 19 Pick., 105; 1 Robinson's New Practice, p. 153 to 156.

*Stanton & Allison* for the defendant in error.

The question for the consideration of this court is, whether the property attached by the defendant in error was liable to attachment as the property of the plaintiff in error, or whether it had passed by the assignment of the bank to its assignee so as to exempt it from attachment as the property of the bank.

We maintain first, that whatever may be the opinion of the court as to the validity of the attachment the judgment cannot be reversed.

The motion to dismiss, made June 5th, 1867, was upon the ground that the bank was not a foreign corporation, and,

therefore, was not liable to an attachment as a non-resident debtor. The assignment now set up was not then claimed or insisted on. This makes the same question that is made in the *Bank of the Valley* vs. *The Bank of Berkeley*, now in the hands of the court. Assuming that that point was not well taken, and that the motion to dismiss was properly overruled, the action is right whatever may be the result as to the ownership of the property attached.

The court was not then informed of the existence of the assignment, and, therefore, the judgment of the court refusing to dismiss the attachment cannot be reversed on account of the assignment.

On the 26th of August, 1867, the bank appeared and filed a plea, setting up the assignment in *bar of the action.*

By filing a plea in bar the bank appeared and submitted itself to the jurisdiction of the court, and hence the attachment became wholly unimportant so far as the maintenance of the action and the judgment of the court are concerned.

Whether the attachment appropriated the property attached or created a lien upon it was a question which could not arise until after judgment.

This is a question that can only arise upon the judgments against the garnishees in attachment, and no such judgments have yet been rendered.

No question can arise, therefore, upon this record as to the validity or effect of the assignment. At present we are only dealing with the judgment of the court against the bank. The indebtedness of the bank is found by the jury, and is not controverted. A defence is set up in bar of the action, denying the plaintiff's right to recovery, which only goes to the validity of the attachment.

Hence whatever may be the opinion of the court as to the effect of the assignment or the validity of the attachment the judgment of the circuit court must be affirmed.

As the circuit court will doubtless desire to know the opinion of this court as to the effect of the assignment and

the validity of the attachment to enable it to dispose intelligently of the property attached, we propose now to consider that question.

The 5th section of chapter 110, p. 566, of the Code of Virginia, provides that every deed or mortgage of real estate, or goods and chattels, shall be void as to creditors and subsequent purchasers until it is recorded in the county where the real estate or goods and chattels may be.

By the agreed statement of facts, it is agreed that "the fund attached was in this (Berkeley) county, and that the parties in whose hands the same was attached, as well as the plaintiff, were residents of this county."

The replication alleged that the deed of assignment was never recorded in Berkeley county, and that neither the plaintiff nor the garnishees in attachment had any notice of its execution. The copy offered in evidence is taken from the records of Jefferson county. No issue is taken on the plaintiff's replication.

The record, therefore, shows that the deed was never recorded in Berkeley county. It is, therefore, void as against the plaintiff, who was a creditor of the assignee.

It is well settled that every government has power and jurisdiction over all property within its limits without regard to the domicil of the owner. Story on Conflict of Laws, sec. 387, 390; *Green* vs. *Van Buskirk*, 5 Wallace, 307; *Lanfrau* vs. *Sumner*, 17 Mass. Rep., 110; *McNeil* vs. *Glass*, 13 Martin's Rep., 261; *Lamb* vs. *Durant*, 12 Mass. Rep., 54.

Stautable assignments cannot operate beyond the territory of the sovereign by virtue of whose laws the assignment is made, to the prejudice of creditors in other countries. Story on Conflict of Laws, sec. 414, 416; *Ingraham* vs. *Gegre*, 13 Mass., 146; *Harrison* vs. *Sperry*, 5 Cranch; *Blake* vs. *Williams*, 6 Pick., 285.

An attachment of a debt, made before notice of its assignment, will prevail against the assignment, though notice be given to the debtor before judgment against him as gar-

nishee. *Judah* vs. *Judd*, 5 Day, 534, (Conn.); *Bishop* vs. *Holcombe*, 10 Conn., 444; *Van Buskirk* vs. *Hartford*, F. I. Co., 14 Conn., 141; *Ward* vs. *Morrison*, 25 Vermont, 593; *Gillairdet* vs. *Howell*, 6 Am. Law Register, N. S., No. 9, p. 522, July, 1867.

BERKSHIRE, J. · This is an action of assumpsit instituted by the defendant in error against the plaintiff in error in the circuit court of Berkeley county.

The plaintiff, in the court below, upon affidavits averring that the defendant was a non resident of the State and had estate and debts due it in Berkeley county, sued out sundry attachments which were levied or served on some of the debtors of the defendant as garnishees, who resided in said county.

From a bill of exceptions, taken by the defendant, it appears that, on the first calling of the cause, the defendant appeared and moved the court to dismiss the summons or remand the cause to rules on the ground that the summons could not be sued out in said county, and had not been served on the defendant according to law, because it had been proceeded against by order of publication and attachment when the defendant was not a *foreign* but a *domestic* corporation, and could not, therefore, be proceeded against as a non resident. But the court held that the defendant *was* a foreign corporation and was properly proceeded against as a non resident, and that the process was duly executed by order of publication, and accordingly overruled the motion to dismiss or remand to rules.

The objection to the service of process as indicated in the bill of exceptions was because the circuit court had no jurisdiction of the cause, by reason of the defendants being a *domestic* corporation. It being the purpose, therefore, of the defendant to raise the question of the jurisdiction of the court in the premises I think it was not proper or competent for it to do so in this indirect way; as by section 19 of chapter 171 of the Code of 1860, p. 711, it is provided that "when

the declaration or bill shows on its face proper matter for the jurisdiction of the court, no exception for the want of such jurisdiction shall be allowed unless taken by plea in abatement," &c.

This motion, therefore, was properly overruled, whether the defendant is to be regarded as a foreign corporation or not.

The defendant subsequently filed a special plea in bar, alleging that prior to the issuing and levy of the attachments, the defendant had made a deed of trust and assignment to Henry M. Brent, as trustee and assignee, of all its estate, both real and personal, including the debts due from the debtors of the defendant who had been summoned as garnishees in this case, for the benefit of and distribution among all its creditors, and that by reason of which trust and assignment the debts aforesaid passed to the said Brent for the use and purpose aforesaid.

This plea sought to raise the question of priority of lien on the debts so attached, which could only be properly done by the petition of said Brent or the creditors claiming under and entitled to the benefit of the trust and assignment, and the plea, therefore, was clearly bad.

There was a special replication filed to this plea by the plaintiff, denying the authority of the defendant to make such trust and assignment, and also denying all notice and knowledge of the trust and assignment on the part of the debtors of the defendant at the time the process and attachment was served on them. And without any formal issue or other pleadings, so far as the record discloses, a jury was empanneled and sworn and found a verdict for the plaintiff for the amount of his claim, subject to the opinion of the court, upon the law arising on the facts agreed in the case. The court accordingly rendered a judgment on the agreed facts in favor of the plaintiff for the amount of the verdict and costs and continued the cause for further proceedings against the persons summoned as garnishees.

As the facts agreed were intended to raise the same questions of law sought to be raised by the plea and motion to

dismiss or remand the cause to rules, which, as we 'have seen, were not and could not be properly raised in that mode, it was no error, as it seems to me, to render the judgment on the agreed facts, which is now complained of, and I think the same should be affirmed with costs here and damages.

After this judgment was rendered, however, the trustee and assignee, Henry M. Brent, filed his petition in the cause, setting up the assignment of the debts so attached in the hands of the garnishees, and claiming the same for the benefit of [the creditors of the defendant.

This petition is still pending and the questions of title and priority of lien involved in it would properly only arise on the hearing of said petition. But as it is desired by all the parties interested in the question that it should be decided now for the guidance of the circuit court in the subsequent proceedings in the cause, I will now proceed to its consideration.

The precise legal proposition we have to determine is: does a voluntary assignment made in Virginia of a debt due from a citizen and resident of this State to a resident of the former State pass the debt to the assignee at the time of the assignment, so as to defeat a subsequent attaching creditor of the assignor in this State, whose attachment is issued and served on the debtor of the assignor *after* the assignment but *before* such debtor had notice of it?

It may be assumed, I think, as a well settled principle in this country, notwithstanding the strong doubts expressed by some eminent jurists, that involuntary or coercive assignments do not operate beyond the territory and jurisdiction of the State or sovereign under whose laws such compulsory assignment was made.

But on the other hand the doctrine seems to be equally well established, that the *bona fide* and voluntary assignment of personal property and choses in action whereever situated or found, pass to the assignee at the time of the assigment, and consequently will have priority over subsequent leinors, although neither such leinors nor the debt-

ors (in case of a chose in action) had notice of the assignment at the time the lien was created.

This is clearly the general rule, and will prevail unless it comes in conflict with some positive or customary law of the State or place where the property or choses in action may be located or found. Story on Conflict of Laws, p. 658, sec. 411; *Black* vs. *Zacharie & Co.,* 3 Howard, 514; *Means* vs. *Hapgood,* 19 Pick., 105; 1 Rob. Prac. (new), 153–6; *Wynn* vs. *Wyatt's adm'r,* 11 Leigh, 584; *Hickman* vs. *Lacky,* 6 Grat., 210.

The reason of the rule seems to be that, as all the creditors and purchasers of the assignor stand on the same footing in point of merit and could claim no preference over each other on that ground, it naturally follows in such a case that he who is first in time shall be first in priority.

Was the assignment in the present case voluntary or compulsory? It seems to me it must be regarded as a voluntary act and assignment on the part of the assignor; for although authorized it certainly was not compelled by the law to make it. Unless, therefore, there is something in the law of the State to prevent the operation and effect of the assignment here it must, according to the established doctrine, prevail over that of the lien of the attachment in controversy.

So far as the choses in action are concerned I can see nothing in the letter or policy of our laws that would invalidate the assignment here. The 5th section of chapter 118 of the Code, p. 566, would only avoid it as to real estate and goods and chattels (if any) by reason of its not being recorded in Berkeley county. And I think it may be plainly implied from the omission to include choses in action in this section, that notice to the debtor (which is required by the laws of Connecticut and perhaps some other States) of the assignment of the debt due from him to the assignor was not deemed at all necessary or essential to the validity of the assignment so far at least as creditors and purchasers are concerned.

The assignment, therefore, being voluntary and *bona fide*

and not in conflict with the laws of this State, I think it passed the debts in controversy to the assignee who thereby acquired priority over the attaching creditors.

The case, therefore, must be remanded to the circuit court for further proceedings against the garnishees, and on the petition of the assignee filed after the judgment was rendered, on the facts agreed.

The other members of the court concurred.