# WHEELING.

## MATHEWS *v.* MILLER AND QUARRIER.

Submitted January 21, 1885.—Decided April 25, 1885.

*(SNYDER, JUDGE, Absent.)*

1. A statutory award must be regarded as complete, when it is signed and published and ready to be returned to court.    (p. 823)

2. The general powers of a court of chancery over statutory awards are expressly recognized in the statute providing for such awards. (p. 823.)

3. When a statutory award is made and is ready to be returned to court, the party, against whom the award is, may bring his chancery suit to set it aside. (p. 823.)

4. Where the submission requires that the award should be made within a specified time, and both parties long after the said time has expired appear before the arbitrators and argue the case, the objection to the award, on the ground that it was not made within the time specified, is waived. (p. 823.)

5. It is not fatal to an award in writing othewrise good, that it is not under seal, when the submission required it to be made under seal. (p. 824.)

6. A written opinion on the law of the case prepared by one of the arbitrators and concurred in by the other and referred to in the award must be regarded as a part thereof, and it must be taken from the opinion, that the arbitrators intended to decide on the law of the case and to decide the case according to law. (p. 828 )

7 When the arbitrators intend to decide the case according to law but clearly and palpably mistake the law their award will be set aside, but if they mistake the law on a doubtful point, although this Court would have decided the law differently, the award will not for this reason be set aside. (p. 828.)

The opinion of the Court contains a statement of the facts of the case.

*J. H. Holt* and *Payne & Green* for appellant.

John H. Holt:—

I. The court below had equity jurisdiction over the award. Code of W. Va. 1868, p. 569, sec. 4; *Wheeling Gas Company* v. *Wheeling,* 5 W. Va 448.

II. It should have exercised that jurisdiction by setting aside the award. 1. Because the award was not made and returned until long after the expiration of the time provided in the submission. Morse on Arb. and Award, p. 261; *Brown* v. *Copp,* 5 N. H. 223; *Hall* v. *Hall,* 3 Conn. 308; *White* v. *Paysan,* 10 Yerg. 441. 2. Because it was not returned under seal as required in the submission. Morse on Arb. and Award, p. 261; *Marsh* v. *Parker,* 20 Vt. 198. 3. Because the arbitrators. *meaning to conform to the law, plainly mistook it* as laid down in *Hall*

v. *The Bank of Virginia*, 14 W. Va. 607, 609, and based their award upon such mistake. *Moore* v. *Luckess's next of kin*, 23 Grat. 160; *Stone* v. *Atwood*, 28 Ill. 30; *Hewitt* v. *The State*, 14 Am. L. Cas. 259. 4. Because, even if, as the arbitrators found, the sales and assignments under the decree of the Federal Court were *involuntary*, still they were good as far as the Farmers'. Bank of Virginia and the trustees were concerned, and could have been questioned only by the creditors of the branch bank in West Virginia. The appellees were not such creditors.

III. The assignment to the appellant was broad enough to include the receipt given by the appellees to the assignor for the notes, and entitled him to the remedies of the assignor against the appellees. *Mchaffy* v. *Share*, 2 Pa. (P. & W.) 361; *Grocers' National Bank* v. *Clark*, 48 Barb. 26; *Purple* v. *Hudson R. R. Co.* 4 Duer (N. Y ) 74; *Weire* v. *Davenporte*, 11 Iowa, 49.

IV. The statute of limitations was no defence. *Roberts* v. *Armstrong*, 1 Bush (Ky.) 263; *Denton* v. *Embury*. 10 Ark. 228; *McDowell* v. *Potter*, 8 Pa. St. 189.

*W. A. Quarrier* for appellees.

JOHNSON, PRESIDENT ·

The defendants, attorneys at law, executed their receipt to Thomas Mathews, cashier of the Farmers' Bank of Virginia, on June 7, 1867, for certain claims therein specified, which they received for collection. The money was collected on one note and, less fees, was paid over; and suit was brought on the other two. After the suits were brought, the defendants threatened to defend them, on the ground that they were payable in Confederate money. The notes were executed within the Confederate lines payable to a bank created by one of the Confederate States, and executed by officers in the Confederate army. Upon the promise of payment if suits were dismissed, Miller, who was the acting attorney, dismissed them, thinking that if the defendants did not keep their promise, he still could sue. He did not bring suit, until the Code was adopted, which barred the suits. This was occasioned by the delay in publishing the Code. His claim is, that he pursued the course he did, in order to secure the payment of the notes without presenting any difficulty about Confederate relations, and so avoid any plea or defence on that ground, which was continually threatened by the defend-

ants. The parties entered into an agreement to submit to
W. S. Laidley and E. B. Knight the final settlement and
decision of the said dispute as to the obligation and liability
of the said Miller and Quarrier as attorneys at law to pay to
the said Mathews the said notes and interest thereon. The
award was to be made under their hands and seals on or be-
fore the —— day of ———, 1876. Mathews, as the record
shows, filed a brief before the arbitrators, dated July 23,
1877, and still another dated March 15, 1878. The award
was for the defendants, and made on August 8, 1879. It is
not under seal and was not returned to the Court. It is as
follows:

" ALEXANDER F. MATHEWS
            *vs.*
" S. A. MILLER AND W. A. QUARRIER.

" The controversy between the above parties having been
by written agreement referred to E. B. Knight and W. S.
Laidley, arbitrators, and the same having been made and
determined, they do find and make the following *award.*
That upon consideration of the evidence adduced, and upon
the argument of counsel, the said arbitrators, E. B. Knight
and W. S. Laidley, for reasons assigned in writing, find for
the defendants, Miller & Quarrier, and determine that there
is no liability on the defendants to the plaintiff.

" E. B. KNIGHT,<br>" W. S. LAIDLEY."

The written opinion, which preceded the award, was pre
pared by W. S. Laidley and was signed by him and E. B.
Knight on the 8th day of August, 1879, and had the follow-
ing endorsement thereon: " To W. S. Laidley, Esq.: I have
examined the authorities cited by the parties on the point
suggested and believe your conclusion is correct, and that the
award should be made accordingly. Will you draw it?

" E. B. KNIGHT."

The legal opinion is as follows: " The first question that
arises is: Is there any liability on the defendants to the plain-
tiff? Miller & Quarrier gave the receipt to the cashier of the
Farmers' Bank of Virginia. Has the title acquired by the
plaintiff given him a right to call upon the defendants to pay
him? The plaintiff insists that the question does not arise

upon the arbitration, or the paper should or might have been prepared to meet it. But it seems to me, it does fairly arise upon the paper, as submitted to us, and the point has been raised and we must decide it. The case referred to in 3 W. Va. 309, determines that a voluntary assignment, made in another State, of a debt due from a citizen in this State to a citizen of another State, passes the debt to said assignee, but otherwise as to an involuntary or coercive assignment. And in 7 W. Va. 31, the case of this bank in controversy, and of the assets in controversy, it was held that the bank had a right to make the assignment it made on January 19, 1867, and that the assignment was valid and effectual for that purpose. In 9 W. Va. 424, in the case of Harrison executor, against the said bank, it is held that the deed of trust executed by said bank on June 19, 1867, to its trustees, whereby it conveyed its assets, some of which were at Lewisburg, was voluntary and not compulsory, and that it passed the assets at Lewisburg to the trustees for the use of the creditors. The said court further held that the appellant's title to the assets were inferior to those of the trustees for the bank. As to Thomas Mathews, they merely refused to disturb the decision of the court below, as he had all he claimed, and was the appellee, but did not decide that his title was good or bad, and expressly reserved the rights of the trustees and creditors of said bank from the effect of said decision. To my mind it is clear, that the defendants are not liable to the plaintiff, because the title to the notes, at the time they were placed in the hands of the defendants, was in Robinson and Goddin, trustees, and that the effect of the sale of said assets under the decree of the United States district court in Virginia could not affect the assets out of Virginia and in West Virginia, and it is only through this decree, and assignments under it, that the plaintiff claims, and there is no evidence of any transfer of the title of said assets by the said trustees, Robinson and Goddin."

The plaintiff, Alexander F. Mathews, filed his bill in September, 1883, in the circuit court of Kanawha county, setting forth a part of the above facts and the several assignments from W. B. Isaacs & Co., the purchasers under the sale made under the decree of the Federal court in Richmond, dated

December 23, 1878, to Thomas Mathews, and the assignment from Thomas Mathews to A. F. Mathews dated October 31, 1873, sets out the proceedings before the arbitrators and the opinion and award, and charges that such paper returned as an award is ineffectual as such, invalid and inoperative, and must be set aside, annulled and declared void, because, first, a time was named in the submission, within which the award was to be made, and it was not made until long after the time had elapsed and after the authority of the arbitrators had ceased; second, because the submission called for an award under seal, and the writing delivered as an award is not under seal; third, and mainly, because the arbitrators intending to decide the case according to and in conformity with the law, as shown by the opinion returned with their award, have clearly and plainly mistaken the law; that the deed of trust executed in Richmond to Robinson and Goddin, trustees, was voluntary, and therefore operated to pass and convey to the said trustees, the personal assets of the Farmer's Bank of Virginia in this State, including the notes, about which the said controversy arose, has been repeatedly decided. (See 3 W. Va. 309; 9 W. Va., *Harrison's executor* v. *The Farmer's Bank of Virginia*; and *Hall et als* v. *The Bank of Virginia*, 14 W. Va. 584.) This is admitted and decided by the said arbitrators in their said opinion; and this being so, the sale and assignments made under the decrees of the United States Court in a suit, in which said trustees were parties, whether regarded as voluntary or involuntary, by mere authority of law would necessarily transfer to the plaintiff all personal assets though located in a different State. As against the Farmer's Bank of Virginia and the said trustees his assignment though involuntary is valid; and that is all that is necessary to entitle him to recover. He only asks to be put in the situation of the bank itself, subject to every equity belonging to the creditors of said Bank in West Virginia; but no such equity has been set up, and he is the only claimant for the fund in controversy, and being thus situate, and being entitled to all the rights of the bank and of the said trustees, his claim against the said attorneys of the bank is indisputable, and they certainly can not deny his title, &c. He prays that the said award may be set aside and annuled, and that the Court will

proceed to decide the matter in controversy and grant him such relief, as he is entitled to, by requiring the said defendants to pay him the amount of said notes with interest and costs, subject to a credit of $300.00, and for general relief.

The defendants demurred to the bill, and on January 3, 1883, the court sustained the demurrer and dismissed the plaintiff's bill. From this decree the plaintiff appealed.

It is here objected by the counsel for appellees, that the award is not complete, as it is a statutory award and is not complete, until it is returned to court; and *French* v. *Mosely*, 2 Litt. 247, is cited to sustain the proposition. It was there held, that the power of the arbitrators over the award was not terminated, until the award had in fact been returned to court. In *Henly* v. *Menefee*, 10 W. Va. 771, it was held, that the court did not err in permitting the arbitrators to make a clerical correction in the award, after it was returned; and that such correction did not constitute it a new award. We think the award must be regarded as complete, when it is signed and published and ready to be returned to court. While chapter one hundred and eight of the Code provides for the successive steps to be taken in reference to statutory awards, yet it is expressly provided by the fourth section, that, although made under the provisions of said chapter, the power of courts of equity over them shall not be taken away. (*Wheeling Gas Company* v. *Wheeling*, 5 W. Va. 448.) This cause is therefore properly in a court of equity, and the question is: Did the bill on its face show that said award ought to be set aside?

The *first* objection is, that it was not made within the time named in the submission. We are now in a court of equity; and we must deal fairly and justly by the award. Equity relieves against fraud, mistakes or accidents appearing in awards, and while some of the authorities hold, that where the submission requires the award to be made within a certain time, unless completed within that time, it will be bad, yet, if it was necessary to the validity of the award, that it should be completed within the time specified in the submission, the objection was waived by the party now complaining, as, long after the said time had expired, he argued the case before the arbitrators and sought an award in his favor.

But it is insisted, that the award is bad, because the submission required, that it should be made under seal, and that the seal was omitted. The following authorities are cited to sustain this point: Morse on Arb. and Award, 261; *Marsh* v. *Parker*, 20 Vt. 198; *Goodell* v. *Raymond*, 27 Vt. 251; *White* v. *Fox*, 29 Conn. 570; *Crabtree* v. *Green*, 8 Ga. 8. Morse does say, that if the submission calls for an award under seal, an award in writing but not under seal is bad; and he cites *Brown* v. *Copp*, 5 N. H. 223, which does not sustain the text. It is there held, a contract by deed can only be altered by deed, after it is completed. None of the authorities cited directly sustain the text in Morse on Arb. It seems to us not to be a very material matter, that the award should be under seal. An award is just as specific without the scrolls as with them, and, if it be otherwise valid and binding, it would be taking a very narrow and technical view of the case to hold it bad, merely because it did not have the seals of the arbitrators attached. According to *Henly* v. *Menefee* the arbitrators could yet be permitted to attach their seals to their names. The fault, for which a court of equity will set aside an award, must be such as has injured the party, against whom it has been committed. How is Mathews injured by the failure of the arbitrators to attach scrolls to their names? A more substantial objection than this must be presented to a court of equity to induce it to set aside the award of persons, whom the parties have trusted to settle their difficulties for them.

But the main objection insisted on in the bill is, that the arbitrators, as is shown by the written opinion referred to in the award, intended to decide according to law, and that their award is palpably against law. When does an error of law vitiate an award? In *Mickles* v. *Thayor*, 14 Allen. 114 it was held, that, where certain matters in dispute were refered to referees to "settle and determine," and the agreement of submission provided, that "the award of such referees or of a major part of them, when made, shall be final and conclusive between the parties, the said referees are to determine all questions according to the rules of law and equity," in the absence of fraud, corruption or mistake upon the face of the award the decision of the referees was final upon the question of law as well as the question of fact in-

volved in the case.    Chapman, Judge, said : "One of the principal questions made in the case is, whether this clause is to be interpreted as a limitation of the powers of the arbitrators, or whether it is merely directory.    If it is directory, it leaves them to be the ultimate judges, as to how the matters would be tried in a court of law or equity, and thus makes their decision final and conclusive, as the parties agree it shall be.    But if it is a limitation of their powers, then the award is not final or conclusive, but this court is the ultimate tribunal to decide, how the principal questions ought to be settled.    It is an objection to this view, that the only power thus left to this court is of a destructive character in case of our disagreement with the arbitrators.    We may destroy the award but have no power to correct it.    The agreement is to be interpreted in the light of the settled principles of law.    In *Fairchilds* v. *Adams*, 11 Cush. 549, Chief Justice Shaw says:    'It has long since been settled, that awards are conclusive on all matters of fact submitted to the arbitrators.'    He also says, that 'in the State courts it has been a very regular course for many years to hold, where no error or mistake appears upon the face of the award, the decision of the referees is conclusive in law.'    He enumerates the exceptions to this rule.    *  *  In commenting in *Fairchilds* v. *Adams*, upon the case of *Bigelow* v. *Newell*, 10 Pick. 348, where the parties used in their agreement of submission the phrase 'always having regard to the legal rights of the parties,' and where the award was held to be valid, though it was not in all respects conformable to law, the Chief Justice forcibly states the principle upon which awards stand.    'The ultimate reason for maintaining any award is indeed, that the parties have selected their own arbitrators and agree to refer certain things to their determination as their attorneys; and it is idle to say they have a right to do that, and that when they have done it the decree of the arbitrators fairly made is not final.'    The decision in *Bigelow* v. *Newell*, that the clause 'always having regard to the legal rights of the parties' is not a limitation of the authority of the referees, is applicable to the clause in question in this case."

In *Boston Water Power Company* v. *Gray*, 6 Metc. 131 it was held, that arbitrators have authority to decide conclusively

all questions of law necessary to the decision of the matters submitted to them, unless they are restricted by the terms of the submission, or unless it appears on the face of their award, that they intended to decide according to law but have decided contrary to law, and there is no distinction in this respect between the authority of arbitrators, who are selected from the legal profession, and that of other arbitrators.

In *Brown* v. *Clay*, 31 Me. 518 it was held, that, if an action be referred by a rule of court, which contains no restriction upon the powers of the referee, his award upon the *law* as well as upon the *facts* is conclusive.

In *Smith* v. *Boston and Maine Railroad*, 16 Gray 521 it was held: "An award upon a submission in the country not returned into court nor submitting questions of law to the decision of the court is conclusive upon the parties, although the arbitrators 'at the request of' one of the parties annex 'a statement of the facts and principles, upon which the foregoing award was made, to be taken as a part of said award;' and the court will not examine the questions of law arising upon that statement, especially if the facts are complicated, and the questions of law doubtful." Dewey, Judge, said: "Another case stated in the authorities upon this subject, and that upon which the award is to be set aside, if at all, is this, 'where it is manifest upon the award, that the arbitrator intended to decide according to law, but has mistaken the law.' This ground has been supposed sufficient to open awards, where the report of the arbitrator has presented on its face the full grounds of making the award. This proposition assumes, that the error is manifest on the award itself, and, as it seems to us, it must be taken with the qualification, that the award so clearly indicates the purpose of the arbitrator to decide by the strict rules of law, that it justifies the judicial mind in supposing, that the arbitrator would have made a different award, had he known, that the judicial tribunals held a different view of the questions of law arising in the case from those entertained by himself."

In *Cutting* v. *Stone*, 23 Vt. 571, it was held, that "questions of law decided by a referee can not be reviewed, if it do not appear from his report, that he decided according to the rules

of law, and he was not required by the rule of referees to do so."

In *Moore* v. *Luckess's next of kin*, 23 Grat. 160, it was held: " Where an order is made in a pending cause, submitting the matters in dispute therein to arbitrators, and the arbitrators have before them the pleadings and exhibits, duly consider them, and return them to court with their award, if it appears from an inspection of the whole, that the arbitrators have made a plain and palpable mistake of law, there can be no valid ground for refusing relief in such cases."

In *Morris* v. *Ross*, 2 H. & M. 408, it was held, that an award ought not to be set aside either in a court of law or equity on the ground of a mistake in the judgment of the arbitrators, unless that mistake be *very palpable*, a mere difference of opinion between the court and arbitrators in a *doubtful* case, not being sufficient to authorize such interference. See also *Fudikar* v. *Insurance Company*, 62 N. Y. 392; *Underhill* v. *Van Courtland*, 2 Johns. Ch. 339; *Merritt* v. *Merritt*, 11 Ill. 565.

In *City of Portsmouth* v. *Norfolk City*, 31 Grat. 727, it was held, that " conceding that the arbitrators intended to decide according to law, and that they have not done so in every instance, it does not follow that the award is invalid. Where the merits in law and fact are referred to an arbitrator of competent knowledge, and there is not any question reserved by him, the court will not open the award, unless something can be alleged amounting to a perverse misconstruction of the law or misconduct on the part of the arbitrator. Where arbitrators mean to decide according to law, and they mistake the law in a palpable material point, the award will be set aside. But their decision on a doubtful point of law or in a case, where the question of law is designedly left to their judgment, will generally be conclusive. It must appear they grossly mistook the law; and the court will not interfere, merely because it would have given a different decision in the particular case." The court, per Staples, Judge, quotes with approbation, the language of Chancellor Kent in *Underhill* v. *Van Courtland*, 2 Johns, 339: " If every award must be made conformable to what would have been the judgment of this court in the case, it would render arbitration useless,

and vexatious, and a source of great litigation; for it very rarely happens that both parties are satisfied. The decision by arbitration is the decision of a tribunal of the parties' own choice and election. It is a popular, cheap, convenient and domestic mode of trial, which the courts have always regarded with indulgence." Staples, Judge, further says: " In *Bassett's administrator* v. *Cunningham*, 9 Grat. 684, this court lays marked stress on the fact, that the arbitrators were the counsel of the parties, and the umpire a learned and distinguished member of the legal profession." And Judge Allen quotes with approbation what Lord Ellenborough said in *Sharsman* v. *Bell et als*, 5 Manle & Sel. 504, " Where the merits in law and in fact are referred to an arbitrator of competent knowledge, as we must presume a gentleman of the bar to be, and there is not any question raised by him, the court will not open the award, unless something can be alleged amounting to a perverse misconstruction of the law, or misconduct on the part of the arbitrator."

The doctrine laid down in most of the cases is, that if the arbitrators refer any matter to judicial enquiry by spreading it on the face of the award, or if they mean to decide according to law and mistake the law in a palpable material point, the award will be set aside. But their decision on a doubtful point of law, or in a case where the question of law is originally left to their judgment, will generally be held conclusive. (2 Sto. Eq. Jur. sec. 1455 and cases cited in note). It must appear they grossly mistook the law; and the court will not interfere, merely because it would have given a different decree in the particular case. (*Smith* v. *Smith*, 4 Rand, 95; *Herruk* v. *Blaine*, 1 Johns. ch. 101; *Moore* v. *Luckess's next of kin*, 23 Grat. 160.)"

In the case before us it is clear the arbitrators intended to decide according to the law. They were clearly not limited by the terms of the submission to decide strictly according to law, yet it is manifest from the opinion referred to in their award they intended to do so. We deduce from the authorities the proposition, which we may regard as settled, that where the arbitrators intended to decide the case according to law but clearly and palpably mistook the law, their award will by a court of chancery be set aside, but if they

mistook the law upon a doubtful point, although this Court would have decided the law differently, the award will not be set aside. Did they in this case make a palpable mistake of law? The point, on which they decided was that the transfer of the assets of the bank under the decree of the Federal court in Richmond was involuntary and did not pass the assets outside of Virginia, and therefore the title to the assets was not in A. F. Mathews but in Robinson and Goddin, trustees, who held them under a voluntary deed from the bank.

In the case in 3 W. Va. 316, the following language was used by Berkshire, President: "It may be assumed, I think, as a well settled principle in this country, notwithstanding the strong doubts expressed by some eminent jurists, that involuntary or coersive assignments do not operate beyond the territory and jurisdiction of the State or sovereign, under whose laws such compulsory assignment was made."

In *Harrison* v. *Farmers' Bank*, 9 W. Va. the question was raised: "Was the title to the assets of the Lewisburg bank in its trustee or in the assignees of the vendee at the judicial sale or in the creditors of the bank?" The Court said: "But this Court not deeming it necessary or proper to pass upon the title of the said Mathews to said assets affirm said decree as to him without prejudice to the rights of the trustees in said trust-deed or the creditors themselves." These were the same assets, which were then claimed by Thomas Mathews, who afterwards assigned them to the plaintiff here, A. F. Mathews.

In *Hall* v. *The Bank*, 14 W. Va. 606, Green, J. said: "On the question as to the effect of assignments of personal property or choses in action in one State or country, not by the owner but by operation of law or by a decree of a court in another State or country, there has been much conflict of opinion." It is true Judge Green seems in his reasoning to dissent from what was held in *Harrison* v. *Farmers' Bank of Virginia*, 9 W. Va. and *The Bank of the Valley* v. *Gettinger*, 3. W. Va. and says, p. 609: " As Spilman in his answer claims to be acting under this voluntary deed, his right to prosecute his appeal can not be controverted. These trustees were appointed by the decree of the United States district

court in the case of *McIlvaine* v. *Thorn*, to dispose of the assets conveyed to them by the deed, that the same might be applied by the court as directed by this deed. They had the same power under this deed to dispose of those assets in like manner. Their disposition and assignment of it under this decree can not, it seems to me, be regarded as an assignment by mere authority of law, but must have the same effect as a voluntary assignment. *But whether regarded as voluntary or involuntary so far as the prosecution of this appeal is concerned, is immaterial, as we have before shown.*" This case was decided December 21, 1878, but was not published until perhaps after the award in this case was made, which accounts for the fact that it was not referred to in the opinion of the arbitrators. That mistake of law which justifies a court of chancery in setting aside the award of arbitrators must be a palpable one; the award must be against the well settled law, so that it is manifest to lawyers and judges, that the award is against settled law.

We can not say in view of our own decisions on the subject, that the arbitrators in this case were guilty of a palpable violation of law in rendering this award. Had the matter been submitted to us, we might have decided it differently, but that is no reason for setting aside the award. The decree sustaining the demurrer and dismissing the bill must be affirmed.

AFFIRMED.